# Abdul K. Hassan, Esq.
## Attorney and Counselor at Law
215-28 Hillside Avenue, Queens Village, New York 11427
Phone: 718-740-1000 Fax: 718-468-3894 Email: abdul@abdulhassan.com

**Via ECF**

**March 17, 2011**

Hon. Ramon E. Reyes, USMJ
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

                **Re: Joseph Daniels v. 1710 Realty LLC**
                    **Civil Action #: 10-CV-0022 (DGT)(RER)**
                    **Letter Brief in Support of Plaintiff's Proposed Exhibits**

Dear Magistrate-Judge Reyes:

     I represent Plaintiff Joseph Daniels in the above-referenced action and hereby submit the instant memorandum of law on his behalf to address the evidentiary objections raised by Defendant in the pre-trial order. The bench trial before your Honor is scheduled to begin on April 6, 2011. Exhibits 1, 2, 5, and 6 are attached hereto and are addressed below.

     As laid out below, some of the proposed exhibits and objections deal with the equitable tolling issue. In its opposing brief at page 3, Defendant cited the Second Circuit case of Johnson v. Nyack Hospital., 86 F.3d 8, 12 (2d Cir. 1996), and stated that, "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Defendant went on to argue that, "equitable tolling is unnecessary because plaintiff commenced this action within a few months of his last wage payment, well

1

within the two-year statute of limitations period." (Def. Opp. Mem. at 3). This reasoning by Defendant actually benefits Plaintiff when we correct for the time when an FLSA claim accrues. Under the FLSA overtime liability accrues on a weekly basis and each workweek stands alone – see 29 CFR 778.104, 105, 106. As such, assuming that Plaintiff began work in April 1994, the SOL for overtime worked during the first month of work would expire in April 1996 or April 1997 – depending on whether we use a two or three year SOL (a three year SOL applies) and the tolling would begin in 1996 or 1997 and not from the date of Plaintiff's termination as Defendant seems to argue. Because it is more common for lawyers and judges to deal with claims that accrue on a single date, the fact that FLSA claims accrue weekly is often missing from a lot of equitable tolling analysis and when we correct for this error even Defendant's own logic would warrant tolling for the entire period of Plaintiff's employment. Plaintiff also seeks equitable tolling as a sanction as explained below. For these as well as the reasons that follow, all of Plaintiff's proposed exhibits should be admitted into evidence.

### 1. THE GOOGLE MAP RESULTS ARE ADMISSIBLE

During his deposition, Plaintiff testified that he drove his wife to work during his half-hour lunch break. Defense counsel at one of the court conferences, and at other times, argued that this round trip could not be completed in half hour. This issue is material because it affects the number of work hours that Plaintiff can be compensated for. Among the evidence Plaintiff intends to introduce at trial are results from Google Maps (see Exhibit 2 hereto) showing that the distance between Plaintiff's job site and that of his wife is only about four miles and at a very slow rate of driving of 20 mph, the round trip can take only about 12-13 mins – a time which can be even less given that Plaintiff made this journey at 2:30PM instead of during rush hour. In the pre-trial order, "Defendant objects to the admissibility of plaintiff's exhibit 2 (Google Maps

results) based upon relevance, authentication, and hearsay." These objections can be quickly rejected because this Court can easily take judicial notice of the Google Maps results. In this regard, the court in <u>United States v. Sessa</u>, 2011 WL 256330, at 25 n. 12 (E.D.N.Y., 2011), stated in relevance part as follows:

> The distance was calculated by reference to Google Maps. See http://maps.google.com/maps [last checked January 23, 2011]. A court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. R. 201(b). "Courts commonly use internet mapping tools to take judicial notice of distance and geography." Rindfleisch v. Gentiva Health Systems, Inc., No. 10-CV-2111, 2010 WL 3980182, at *11 n. 13 (E.D.N.Y. Oct. 8, 2010).

In addition, the Google Maps results qualify as a commercial publication and are admissible as an exception to hearsay under FRE 803(17). As to authentication, the map results are self-authenticating under FRE 902(6) and (7) especially where they contain an imprint of the Google web address and the date that the Google site published the results. Moreover, Plaintiff's counsel hereby represents to the Court that he entered the two addresses in the exhibit in Google Maps and the results were printed and a true, complete, accurate and correct copy of those results constitute Exhibit 2. Of course, because we are asking the Court to take judicial notice, and given the wide use and acceptability of Google Maps, the Court (as well as Defendant) can examine the Google Maps website to confirm the authenticity and accuracy of the results in Exhibit 2. We can even do this demonstration in the courtroom. For all the foregoing reasons, the Google Maps results are also admissible under the residual hearsay exception – FRE 807.

### 2. THE POSTER-RELATED EXHIBITS ARE ADMISSIBLE

In the pre-trial order, "Defendant objects to the admissibility of plaintiff's exhibits 1, 5 and 6 based upon relevance and authentication." Exhibit 1 is the purported wage poster, Exhibit 5 is Defendant's Supplemental Rule 26 Disclosure and accompanying email concerning purported wage poster and witness Aron Sicherman, and Exhibit 6 is a letter from defense counsel in response to Judge Trager's order about purported poster (defendant should have produced an affidavit from someone other than counsel). In terms of authentication, the documents represented by these exhibits were the subject of Judge Trager's October 6, 2010 Order. Furthermore, these documents were produced by Defendant itself during discovery and are part of the case file. As such, the Court can take judicial notice that these were the documents produced by Defendant. As to relevance, these exhibits are relevant to the issue of credibility and equitable tolling. In addition to the standard equitable tolling analysis, Plaintiff also argues that equitable tolling should be imposed for the entire period of his employment as a sanction for Defendant's conduct concerning the wage poster after the Court receives the evidence at trial. Because Plaintiff was claiming equitable tolling beginning in and around 1996/997 depending on the two or three year SOL, Defendant produced this 1996 FLSA wage poster which it said was found hanging in the basement of the building where Plaintiff worked. The whole purpose of producing this 1996 poster was to represent that the poster notified Plaintiff of his rights from 1996 to the end of his employment in 2009 in an attempt to defeat Plaintiff's equitable tolling argument. However, there is evidence and circumstances (as detailed in Plaintiff's September 24, 2010 motion) which indicate that this poster was hung and photographed after this case was commenced and probably during the discussions about equitable tolling that were ongoing at the time this poster was produced. In his October 6, 2010 Order, Judge Trager gave Defendant a chance to prove that the production and use of this poster was not fraudulent by directing Defendant to answer six specific questions propounded by the Court. The Court directed that all

questions be answered under oath in affidavit form but all we got was an unsworn letter from defendant's counsel stating it cannot answer any of the questions asked by the Court. One of the questions asked Defendant for someone to identify "the location, or locations where this poster was displayed in the subject building during plaintiff's employment." Of all the people who worked and work for Defendant, Defendant could find no one who saw this 1996 wage poster in any location during Plaintiff's employment. Likewise, Plaintiff will testify that during his employment with Defendant this wage poster was never displayed anywhere in the building or in the basement of the subject building as Defendant represented by the production of this poster. Unless a ghost secretly purchased and erected this poster during Plaintiff's employment and then hid it from Plaintiff and Defendant's other employees, it is obvious that the attempt to represent that this poster was displayed during Plaintiff's employment constituted a fraud on the Court and that this poster was most likely erected and photographed after Plaintiff's employment ended in an attempt to defeat Plaintiff's equitable tolling argument.

### 3. THE APARTMENT-RELATED EXHIBITS ARE ADMISSIBLE

Plaintiff's exhibit 3 consists of "wage, apartment/utilities documents produced during discovery." As to these documents, Plaintiff states in the pre-trial order that it reserves the right to object to them on the basis of relevance. This potential objection is without merit. Defendant has asserted as its ninth affirmative defense in this case that the value of lodging and utilities should be counted as part of Plaintiff's wages. Defendant has also advocated this position throughout this litigation and highlighted the apartment provided to Plaintiff in its pre-trial memorandum. Plaintiff concurs and intends to include the value of the apartment and utilities as part of wages for purposes of calculating overtime under the FLSA. In this regard, the FLSA at 29 CFR § 778.116 states in relevant part that:

5

> Where, for example, an employer furnishes lodging to his employees in addition to cash wages the reasonable cost or the fair value of the lodging (per week) must be added to the cash wages before the regular rate is determined.

As such, the apartment and utility records are extremely relevant and clearly admissible.

### IV. CONCLUSION

Based on the foregoing, Plaintiff kindly request that your Honor overrule the objections of Defendant and admit all of Plaintiff's proposed exhibits into evidence.


Dated: Queens Village, New York
      March 17, 2011


Respectfully submitted,

  /s/ Abdul Hassan_____
Abdul K. Hassan, Esq. (AH6510)
215-28 Hillside Avenue
Queens Village, NY 11427
Tel: 718-740-1000
*Counsel for Plaintiff Joseph Daniels*

*cc: Defense counsel David Kim and Patrick Collins via ECFl*

6

# EXHIBIT 1



THE LAW REQUIRES EMPLOYERS TO DISPLAY THIS POSTER WHERE EMPLOYEES AND JOB APPLICANTS CAN READILY SEE IT.

# JOB SAFETY

The Occupational Safety and Health Act of and healthful working conditions throughout

### EMPLOYERS

All employers must furnish to employees of employment free from recognized hazards likely to cause death or serious harm to employ comply with occupational safety and health stand Act.

### EMPLOYEES

Employees must comply with all occupational standards, rules, regulations and orders issued under to their own actions and conduct on the job.
The Occupational Safety and Health Administr U.S. Department of Labor has the primary responsibi ing the Act. OSHA issues occupational safety and h and its Compliance Safety and Health Officers conduc tions to help ensure compliance with the Act.

### INSPECTION

The Act requires that a representative of the emplo sentative authorized by the employees be given an accompany the OSHA inspector for purpose of aiding th Where there is no authorized employee repres Compliance Officer must consult with a reasonable num ees concerning safety and health conditions in the workp

### COMPLAINT

Employees or their representatives have the right t plaint with the nearest OSHA office requesting an insp believe unsafe or unhealthful conditions exist in their work will withhold, on request, names of employees complaining
The Act provides that employees may not be disc criminated against in any way for filing safety and health co for otherwise exercising their rights under the Act.
Employees who believe they have been discriminated file a complaint with their nearest OSHA office within 30 alleged discriminatory action.

### CITATION

If upon inspection OSHA believes an employer has Act, a citation alleging such violations will be issued to the Each citation will specify a time period within which the alle must be corrected.
The OSHA citation must be prominently displayed at o place of alleged violation for three days, or until it is correct er is later, to warn employees of dangers that may exist there

---

## Your Rights Under the Fair Labor Standards Act

### Federal Minimum Wage

**$4.75** per hour
Beginning October 1, 1996

**$5.15** per hour
Beginning September 1, 1997

Employees under 20 years of age may be paid $4.25 per hour during their first 90 consecutive calendar days of employment with an employer.

Certain full-time students, student learners, apprentices, and workers with disabilities may be paid less than the minimum wage under special certificates issued by the Department of Labor.

**Tip Credit** — Employers of "tipped employees" must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference. Certain other conditions must also be met.

**Overtime Pay** — At least 1½ times your regular rate of pay for all hours worked over 40 in a workweek.

**Child Labor** — An employee must be at least 16 years old to work in most non-farm jobs and at least 18 to work in non-farm jobs declared hazardous by the Secretary of Labor. Youths 14 and 15 years old may work outside school hours in various non-manufacturing, non-mining, non-hazardous jobs under the following conditions:
- 3 hours on a school day or 18 hours in a school week;
- 8 hours on a non-school day or 40 hours in a non-school week.
Also, work may not begin before 7 a.m., or end after 7 p.m., except from June 1 through Labor Day, when evening hours are extended to 9 p.m. Different rules apply in agricultural employment.

**Enforcement** — The Department of Labor may recover back wages either administratively or through court action, for the employees that have been underpaid in violation of the law. Violations may result in civil or criminal action.

Fines of up to $10,000 per violation may be assessed against employers who violate the child labor provisions of the law and up to $1,000 per violation against employers who willfully or repeatedly violate the minimum wage or overtime pay provisions. This law **prohibits** discriminating against or discharging workers who file a complaint or participate in any proceedings under the Act.

*Note:* • Certain occupations and establishments are exempt from the minimum wage and/or overtime pay provisions.
• Special provisions apply to workers in American Samoa.
• Where state law requires a higher minimum wage, the higher standard applies.

**For Additional Information, Contact** the Wage and Hour Division office nearest you — listed in your telephone directory under United States Government, Labor Department.

This poster may be viewed on the world wide web at this address: http://www.dol.gov/dol/esa/public/minwage/main.htm

### The law requires employers to display this poster where employees can readily see it.

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210



WH Publication 1088
Revised October 1996

Visual Organizers © 1995 – #E-228 Revised August 1996

# EXHIBIT 2

Case 1:10-cv-00022-RER   Document 34   Filed 03/17/11   Page 11 of 18 PageID #: 255



**Google maps**

**Directions to 140 St Edwards St, Brooklyn, NY 11201**
**3.8 mi – about 12 mins**

You can enter notes here.

Save trees. Go green!
Download Google Maps on your phone at google.com/gmm

Save trees. Go green!
Download Google Maps on your phone at **google.com/gmm**

**A** 1710 Union St, Brooklyn, NY 11213

| | | |
|---|---|---|
| 1. | Head **east** on **Union St** toward **Utica Ave** | go 108 ft<br>total 108 ft |
| 2. | Take the 1st left onto **Utica Ave**<br>About 2 mins | go 0.7 mi<br>total 0.7 mi |
| 3. | Turn left at **Atlantic Ave**<br>About 5 mins | go 2.0 mi<br>total 2.7 mi |
| 4. | Turn right at **Vanderbilt Ave** | go 0.1 mi<br>total 2.8 mi |
| 5. | Take the 1st left onto **Fulton St**<br>About 2 mins | go 0.6 mi<br>total 3.4 mi |
| 6. | Turn right at **Ashland Pl**<br>About 1 min | go 0.3 mi<br>total 3.7 mi |
| 7. | Turn right at the 2nd cross street onto **Willoughby St** | go 397 ft<br>total 3.8 mi |
| 8. | **Willoughby St** turns left and becomes **St Edwards St**<br>Destination will be on the left | go 233 ft<br>total 3.8 mi |

**B** 140 St Edwards St, Brooklyn, NY 11201

These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly. You must obey all signs or notices regarding your route.

Map data ©2011 Google

Directions weren't right? Please find your route on maps.google.com and click "Report a problem" at the bottom left.



**Directions to 1710 Union St, Brooklyn, NY 11213**
3.9 mi – about 13 mins

You can enter notes here.

Save trees. Go green!
Download Google Maps on your phone at google.com/gmm

Save trees. Go green!
Download Google Maps on your phone at **google.com/gmm**

 140 St Edwards St, Brooklyn, NY 11201

| | | |
|---|---|---|
| 1. | Head **north** on **St Edwards St** toward **Myrtle Ave** | go 322 ft / total 322 ft |
| 2. | Take the 1st right onto **Myrtle Ave**<br>About 2 mins | go 0.6 mi / total 0.6 mi |
| 3. | Turn right at **Washington Ave**<br>About 5 mins | go 1.5 mi / total 2.2 mi |
| 4. | Turn left at **Eastern Pkwy**<br>About 4 mins | go 1.5 mi / total 3.7 mi |
| 5. | Turn right at **Schenectady Ave** | go 348 ft / total 3.7 mi |
| 6. | Turn left at **Union St**<br>Destination will be on the right | go 0.1 mi / total 3.9 mi |

1710 Union St, Brooklyn, NY 11213

These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly. You must obey all signs or notices regarding your route.

Map data ©2011 Google

Directions weren't right? Please find your route on maps.google.com and click "Report a problem" at the bottom left.

# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSEPH DANIELS,

                                                  10-CV-0022 (DGT) (RER)

                Plaintiff,

        -against-

1710 REALTY LLC, a/k/a 1710 REALTY
ASSOCIATES,

                Defendant.
-----------------------------------------------------------X

## DEFENDANT'S SECOND SUPPLEMENTAL INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant 1710 REALTY LLC, a/k/a 1710 REALTY ASSOCIATES, by its attorneys McCarter & English, LLP, hereby makes the following supplemental initial disclosures.

### A.    DISCLOSURE 26(a)(1)(A)(i)

The name and, if known, the address and telephone number of each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

    1)    Aron Sicherman
           c/o Sicherman Management LLC
            1451 52nd Street, Brooklyn, New York 11219

Mr. Aron Sicherman has knowledge regarding the existence and location of a U.S. Department of Labor poster, WHD-1088, in plaintiff's work area at the premises known as 1710 Union Street, Brooklyn, New York 11213. Mr. Aron Sicherman should be contacted through Defendant's counsel only.

ME1 10607330v.1

Dated: New York, New York
September 17, 2010

                                            McCARTER & ENGLISH, LLP

By: _____
      Patrick M. Collins
      David S. Kim
      245 Park Avenue
      New York, NY 10167
      212-609-6800
      Attorneys for Defendant

TO:   Abdul K. Hassan, Esq.
       215-28 Hillside Avenue
       Queens Village, New York 11427
       718-740-1000
       Attorneys for Plaintiff

**Subject:** RE: Daniels v. 1710
**From:** "Collins, Patrick" <PCollins@mccarter.com>
**Date:** Mon, September 20, 2010 8:55 am
**To:** abdul@abdulhassan.com
**Cc:** "Kim, David" <dkim@mccarter.com>
**Priority:** Normal
**Options:** View Full Header | View Printable Version | Download this as a file

Mr. Hassan:

Please note that we will also be supplementing our document production with a copy of the WH poster posted in the basement of 1710 Union St., as soon as we receive same (which I expect to be in the next day or so). In the meantime, attached for your information are two photographs of the poster.

I agree that we need to speak, but today will be difficult for me due to my schedule. In any event, I will try to reach you no later than tomorrow.

Regards,

_____
Patrick M. Collins
McCarter & English, LLP
245 Park Avenue, NY, NY 10167
T: 212-609-6849
F: 646-224-5555
pcollins@mccarter.com | www.mccarter.com


-----Original Message-----
From: Abdul K. Hassan, Esq. [mailto:abdul@abdulhassan.com]
Sent: Sunday, September 19, 2010 5:25 PM
To: Collins, Patrick
Cc: abdul@abdulhassan.com; Kim, David
Subject: Re: Daniels v. 1710


Mr. Collins:

    I will be filing a motion to preclude your beyond last-minute witness
- Aron Sicherman, and possibly for other relief. I would like to speak with you before filing the motion so please call after  on Monday to discuss. We also must file the joint pre-trial order by October 4, 2010
- which has now been complicated by your last purported witness.

Abdul.

# EXHIBIT 6



## McCARTER & ENGLISH
### ATTORNEYS AT LAW

November 4, 2010

**VIA E-MAIL**

Abdul K. Hassan, Esq.
215-28 Hillside Avenue
Queens Village, New York 11427

Re: Daniels v. 1710 Realty LLC
Civil Action No.: 10-cv-0022 (DGT) (RER)

David S. Kim
Associate
T. 212.609.6819
F. 646.328.3269
dkim@mccarter.com

Dear Mr. Hassan:

Defendants will not be submitting to you an affidavit regarding the wage poster found at the premises known as 1710 Union Street, Brooklyn, New York 11213. After diligent investigation, defendants have not located an individual with personal knowledge as to the categories of information listed in the Court's Order dated October 6, 2010.

McCarter & English, LLP
245 Park Avenue
27th Floor
New York, NY 10167-0001
T. 212.609.6800
F. 212.609.6921
www.mccarter.com

Therefore, defendants will not be producing any witness with respect to the wage poster.

Please feel free to contact me with any questions.

Sincerely,

David S. Kim

BOSTON

cc: Patrick M. Collins

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

ME1 10828836v.1