UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSEPH DANIELS,

                         Plaintiff,

         -against-                      10-CV-0022 (RER)

1710 REALTY LLC, a/k/a 1710 REALTY
ASSOCIATES,

                         Defendant.

----------------------------------------------------------------X

## DEFENDANT 1710 REALTY LLC'S OPPOSITION TO PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

McCarter & English, LLP
245 Park Avenue, 27th Floor
New York, New York 10167
Telephone: (212) 609-6800
Fax: (212) 609-6921

Attorneys for Defendant
1710 Realty LLC, a/k/a 1710 Realty Associates

MEI 11760683v.1

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ...............................................................................1

OPPOSITION TO PLAINTIFF'S PROPOSED FINDINGS OF FACT ........................................1

OPPOSITION TO PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW................................5

    I.     EQUITABLE TOLLING DOES NOT APPLY. ...................................................5

         A.    Plaintiff Has Not Met the Standard Required for Equitable Tolling. ..........5

         B.    The Mere Failure to Display a Wage Poster Does Not Warrant Equitable Tolling.........................................................................................................6

         C.    Plaintiff's Allegations Regarding Defendant's Conduct During Litigation Are False and Are Irrelevant to the Issue of Equitable Tolling. .................8

    II.    PLAINTIFF MISREPRESENTS THE PARTIES' RESPECTIVE BURDENS UNDER THE FLSA. ....................................................................................9

    III.    PLAINTIFF FAILED TO PROVIDE EVIDENCE THAT CREATES A JUST AND REASONABLE INFERENCE AS TO THE AMOUNT AND EXTENT OF HOURS WORKED. ......................................................................................10

    IV.    PLAINTIFF HAS WITHDRAWN OR WAIVED HIS FLSA CLAIMS FOR ON-CALL PAY AND FOR UNPAID MINIMUM WAGES. ...................................13

    V.    PLAINTIFF'S FLSA CLAIM IS GOVERNED BY A TWO-YEAR STATUTE OF LIMITATIONS........................................................................................14

    VI.    PLAINTIFF IS NOT ENTITLED TO DAMAGES UNDER NEW YORK LABOR LAW...........................................................................................17

         A.    Plaintiff Was Paid All Wages Due Under New York Law........................17

         B.    1710's Conduct Was Not Willful. ...........................................................17

    VII.    PLAINTIFF'S DAMAGES CALCULATIONS ARE WITHOUT BASIS AND IMPROPERLY INCLUDE THE PURPORTED RENT OF PLAINTIFF'S APARTMENT. .............................................................................................18

CONCLUSION....................................................................................................21

## PRELIMINARY STATEMENT

Defendant 1710 Realty LLC a/k/a 1710 Realty Associates, by its attorneys, McCarter & English, LLP, hereby submits the following opposition to plaintiff's proposed findings of fact and conclusions of law.

Plaintiff's proposed findings of fact and conclusions of law rely upon gross mischaracterizations of the record evidence and from inventions of alleged "facts" not established at trial.  Plaintiff would thus have the Court adopt a slew of unreasonable and unsupported inferences.

The Court should not be misled by plaintiff's overreaching and exaggerations.  Plaintiff's vague and speculative trial testimony, which in many cases contradicted his sworn deposition testimony, failed to prove as a matter of just and reasonable inference the amount and extent of his alleged additional hours worked.  In contrast, defendant provided consistent, reliable and unrebutted testimony demonstrating that plaintiff was properly compensated for all hours worked.  The Court must therefore render judgment in favor of defendant.

## OPPOSITION TO PLAINTIFF'S PROPOSED FINDINGS OF FACT

1.      Plaintiff was not "promoted" to building superintendent after working for four months as a handyman for Wolf Sicherman ("Sicherman").  (Contra Plaintiff's Proposed Fact ¶ 3).  Plaintiff was hired by Sicherman's management company on or about April 15, 1994, along with other handyman referred to Sicherman by The Super Agency, to perform minor repairs on an as-needed and hourly basis for a number of different properties managed by Sicherman's management company.   (Sicherman Testimony, Tr. at 81:20-82:3;  82:23-83:25).    After performing services as a handyman for four months, plaintiff was hired by 1710 Realty LLC

("1710") as superintendent for the Building.  (Daniels Testimony, Tr. at 7:22-24; Sicherman Testimony, Tr. at 85:2-4; 88:18-24).

2.      Plaintiff was not "required" to keep the garbage clean "at all times."  (Contra Plaintiff's Proposed Fact ¶ 9).  There is no evidence that 1710 required plaintiff to clean up the garbage on Saturday, Sunday or after hours.  Plaintiff expressly admitted that (i) he was free to do whatever he wished after his workday; (ii) no one from 1710 ever told him he was required to work on Saturdays or Sundays; and (iii) he decided on his own to work weekends without ever informing anyone at 1710.  (Daniels Testimony, Tr. at 45:24-46:9; 51:12-17; 74:18-75:5).

3.      There is no evidence that plaintiff ever performed carpentry repairs.  (Contra Plaintiff's Proposed Fact ¶ 10).

4.      There is no evidence as to what work plaintiff allegedly performed during emergency situations, how often it allegedly occurred, or for what duration.  (Contra Plaintiff's Proposed Fact ¶ 21).

5.      There is no evidence as to what work plaintiff allegedly performed after 6:00 p.m., how often it allegedly occurred, or for what duration.  (Contra Plaintiff's Proposed Fact ¶ 22).

6.      Although plaintiff drove his wife to work most days, there is no evidence that plaintiff used his "lunch break" to do so.  (Contra Plaintiff's Proposed Fact ¶ 23; Contra Plaintiff's Proposed Concl. Law ¶ 6).

7.      There is no evidence that plaintiff was permitted to take one or more rest breaks during his work day "with the consent of defendants."  (Contra Plaintiff's Proposed Fact ¶ 24; Contra Plaintiff's Proposed Concl. Law ¶ 7).  To the contrary, plaintiff was free to take rest

MEI 11760683v.1

breaks as frequently as he wished and for however long he desired. (Itzkowitz Testimony, Tr. at 132:8-14).

8.      There is no evidence that plaintiff ate his meals during "his rest breaks." (Contra Plaintiff's Proposed Fact ¶ 25; Contra Plaintiff's Proposed Concl. Law ¶ 7). To the contrary, plaintiff testified that he took his lunch break from 3:00 p.m. to 3:30 p.m. each day. (Daniels Testimony, Tr. at 69:13-18).

9.      There is no evidence that plaintiff worked 56 hours per week or that his duties filled 56 hours per week. (Contra Plaintiff's Proposed Fact ¶ 27). Plaintiff admitted that he had no regular duties in the weekday afternoons after he had cleaned the Building, that he took a half-hour lunch each day and another half-hour to drive his wife to work four days per week, that he performed minor repairs on an infrequent basis and that there were times when he returned to his apartment prior to 6:00 p.m. because he had no more work to do. (Daniels Testimony, Tr. at 52:6-53:12; 54:13-19; 55:17-57:21; 65:5-16; 69:8-70:2; 70:6-71:12; 73: 14-17). There is no evidence as to what work was allegedly performed by plaintiff on Saturdays or Sundays.

10.     There is no evidence that "possibly hundreds of people" or that any people were coming in and out of the Building on a daily basis. (Contra Plaintiff's Proposed Concl. Law ¶ 12).

11.     Plaintiff did not work two hours every Saturday. (Contra Plaintiff's Proposed Fact ¶ 19). To the contrary, plaintiff testified during his deposition that he was a Seventh-Day Adventist and unequivocally stated, "I don't work Saturdays." (Daniels Testimony, Tr. at 48:24-49:1, 50:2-5). Plaintiff further testified that he did work on Saturdays during the rare emergency, which he admitted occurred only three times in the last six years. (Daniels Testimony, Tr. at

50:2-51:3). At trial, plaintiff contradicted himself and lied, contending that he worked every Saturday. (Daniels Testimony, Tr. at 49:9-16).

12.    There is no evidence that plaintiff's money wages were reduced when he was hired as superintendent for the Building because he was "given an apartment and utilities as part of his wages." (Contra Plaintiff's Proposed Fact ¶ 24; Contra Plaintiff's Proposed Concl. Law ¶ 14). To the contrary, Sicherman testified that plaintiff was paid on an hourly basis as a handyman. (Sicherman Testimony, Tr. at 83:7-12). When plaintiff was hired as superintendent of the Building, his wages were therefore not reduced. (Sicherman Testimony, Tr. at 85:11-14).

13.    There is no evidence that 1710 customarily provides apartments to its superintendents. (Contra Plaintiff's Proposed Fact ¶ 36). Plaintiff elicited no testimony or other evidence as to whether it was customary for 1710 to provide apartments to its superintendents or whether it was customary for Sicherman's management company to provide apartments to the superintendents working at his eighteen (18) to twenty (20) other residential apartment buildings.

14.    There is no evidence that the superintendents preceding and following plaintiff were provided apartments by 1710. (Contra Plaintiff's Proposed Fact ¶ 37). There is no testimony or evidence as to whether those superintendents were offered apartments free of rent, whether those superintendents paid or are paying 1710 rent for their apartments, whether they requested to live in the Building or whether 1710 required them to reside at the Building.

15.    There is no evidence that the value of plaintiff's apartment was "at least $800 a month." (Contra Plaintiff's Proposed Fact ¶ 38). Plaintiff testified that he believed that $800 a month was the rent, not the value or reasonable cost, of apartments that he believed to be comparable to his apartment. (Daniels Testimony, Tr. at 66:17-20).

MEI 11760683v.1

16.     There is no evidence that 1710 took no steps to "ascertain the dictates" of the FLSA and to comply with them.  (<u>Contra</u> Plaintiff's Proposed Fact ¶ 50).  To the contrary, Sicherman testified that none of his employees, including plaintiff, worked overtime. (Sicherman Testimony, Tr. at 108:1-18).

**<u>OPPOSITION TO PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW</u>**

**I.      EQUITABLE TOLLING DOES NOT APPLY.**

17.     Plaintiff's contention that equitable tolling applies in this case and permits him to recover damages for the entire fifteen years of his employment is contrary to the Fair Labor Standards Act ("FLSA") and controlling precedent in this Circuit and runs afoul of the express purpose of the equitable tolling doctrine.

18.     Plaintiff's attempt to recover over fifteen years' damages, without any evidence that he was deceived or his rights were in any way obstructed, is further proof of plaintiff's inflated and manufactured claims.

**A.      Plaintiff Has Not Met the Standard Required for Equitable Tolling.**

19.     "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." <u>Johnson v. Nyack Hosp.</u>, 86 F.3d 8, 12 (2d Cir. 1996).  The equitable tolling doctrine is a "rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." <u>Cao v. Wu Liang Ye Lexington Rest., Inc.</u>, 2010 U.S. Dist. LEXIS 109373, at *3 (S.D.N.Y. Sept. 30, 2010) (quoting <u>Wallace v. Kato</u>, 549 U.S. 384, 396 (2007)).

20.     Thus, "equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." <u>Zerilli-Edelglass v. N.Y.C. Transit Auth.</u>, 333 F.3d 74, 80 (2d Cir. 2003).

ME1 11760683v.1

21.     There is <u>no</u> evidence in the record that plaintiff was prevented or deterred in <u>any</u> way from exercising his rights under the FLSA.   Therefore, plaintiff has failed to meet the standard for equitable tolling.

22.     Plaintiff instead offers a hodgepodge of irrelevant factors that he contends support equitable tolling, none of which are supported by any case law.

23.     Plaintiff offers no support for the proposition that equitable tolling should apply merely because he was "unaware of his rights," or because an employee "should not suffer and be denied wages." (Plaintiff's Proposed Concl. Law ¶¶ 31, 35-36).

24.     Plaintiff offers no support that equitable tolling is warranted due to 1710's failure to keep adequate records.  (Plaintiff's Proposed Concl. Law ¶ 28).

25.     Plaintiff offers no support that equitable tolling is proper simply due to plaintiff's advanced age and inability to obtain certain past benefits.  (Plaintiff's Proposed Concl. Law ¶ 37).

26.     To apply equitable tolling for the reasons set forth by plaintiff would result in tolling the limitations period in virtually <u>every</u> suit for unpaid wages under the FLSA, rather than only in "rare and exceptional circumstances."

### B.     The Mere Failure to Display a Wage Poster Does Not Warrant Equitable Tolling.

27.     New York District Courts have addressed and squarely rejected plaintiff's argument that the failure to post a FLSA wage poster alone warrants equitable tolling.

28.     In <u>Cao v. Wu Liang Ye Lexington Rest., Inc.</u>, 2010 U.S. Dist. LEXIS 109373 (S.D.N.Y. Sept. 30, 2010), the plaintiffs argued that the doctrine of equitable tolling should be applied to extend the FLSA limitations period to cover their full period of employment because

defendants had failed to post an FLSA notice in the workplace. Id. at *2-3.  The court disagreed, holding:

> The circumstances here are not extraordinary and do not warrant equitable tolling.  Plaintiffs complain that defendants never told them they were entitled to overtime pay and never posted the required notice explaining the FLSA's minimum wage provision. There is no allegation that defendants engaged in anything more, *e.g.*, some sort of deception.  Accordingly, the circumstances are not extraordinary and equitable relief is not warranted.

Id. at *3-4.

29.     "To hold that a failure to disclose that an employee is entitled to overtime pay is sufficient to work an equitable toll would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime."  Id. at *4 (quoting Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 479 (S.D.N.Y. 2008)).

30.     Plaintiff relies upon Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318 (2d Cir. 2004) for the proposition that failure to post an FLSA wage poster warrants equitable tolling.  However, Veltri involved a claim under the Employment Retirement Income Security Act of 1974 ("ERISA"), not the FLSA.  ERISA and the regulations promulgated thereunder require a claimant to be provided with a specific notice of his or her right to file an administrative appeal of an adverse benefits determination and of the right to file an action challenging that determination in court.  See Veltri, 393 F.3d at 323; 29 C.F.R. § 2560.503-1(g)(1).  Because the defendant in Veltri failed to provide the plaintiff with the requisite individual notice, equitable tolling applied.  Veltri, 393 F.3d at 325.

31.     Veltri is completely distinguishable from the instant case.  ERISA and the regulations at issue in Veltri deal with an individualized notice of the denial of a specific claim for benefits.  According to the Second Circuit, while the failure to inform an individual of the

right to file a cause of action would not normally mandate equitable tolling, the nondisclosure of ERISA rights "must be viewed in light of . . . Congress's policy of protecting the interests of pension plan participants by ensuring disclosure and reporting to participants and ready access to the Federal Courts." Id. at 324 (internal quotations omitted).  No such congressional policy exists with regard to the FLSA.

32.    Here, plaintiff's claims arise under the FLSA, not ERISA, and therefore the Southern District's decision in Cao is directly on point.  Plaintiff's allegations in this case are no different than the Cao plaintiffs' claims.  There is no allegation and no evidence that 1710 deceived plaintiff as to his rights under law, deterred him from exercising those rights, or engaged in any other extraordinary conduct that would warrant equitable tolling.

33.    Plaintiff alleges only that 1710 failed to post a wage notice, which is insufficient to permit equitable tolling of plaintiff's claims.

**C.    Plaintiff's Allegations Regarding Defendant's Conduct During Litigation Are False and Are Irrelevant to the Issue of Equitable Tolling.**

34.    Plaintiff offers no support for the assertion that defendant's conduct during discovery should result in an "adverse inference against defendant that equitable tolling applies." (Plaintiff's Proposed Concl. Law ¶ 39).

35.    Moreover, plaintiff's allegations regarding defendant's conduct are entirely false. Defendant advised plaintiff by letter dated November 4, 2010 that it would not be producing any witness with respect to the wage poster.  (Plaintiff's Exhibit 6).  In the Joint Pretrial Order filed with the Court on February 7, 2011, defendant did not disclose the wage poster as a potential exhibit or list any witness who would be testifying with respect to any wage poster.  (Docket Document # 33).

8

36.     Despite the Court's express request during the April 1, 2011 Pre-Trial Conference that plaintiff's counsel provide case law supporting his contention that defendant's litigation conduct is in any way relevant to the equitable tolling analysis, plaintiff provides no support whatsoever for his argument but merely repeats his hollow accusations.

## II.     PLAINTIFF MISREPRESENTS THE PARTIES' RESPECTIVE BURDENS UNDER THE FLSA.

37.     An employee bringing an action for unpaid wages under the FLSA "has the burden of proving that he performed work for which he was not properly compensated." Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)).

38.     If the plaintiff meets his burden, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Kolesnikow v. Hudson Valley Hospital Center, 622 F. Supp. 2d 98, 118 (S.D.N.Y. 2009) (quoting Yang v. ACBL Corp., 427 F. Supp. 2d 327, 331 (S.D.N.Y. 2005)).

39.     Plaintiff misrepresents the applicable FLSA standard by stating a defendant can meet its burden of rebutting plaintiff's evidence only through a showing of the "precise" amount of work performed by plaintiff.  (Plaintiff's Proposed Concl. Law ¶ 20).

40.     In support of this stringent alleged burden, plaintiff cites Padilla v. Manlapaz, 643 F. Supp. 2d 302 (E.D.N.Y. 2009) (Plaintiff's Proposed Concl. Law ¶ 21).  However, Padilla dealt only with a plaintiff's claims for unpaid wages under the New York Labor Law and expressly noted that "New York Labor Law places a more demanding burden on employers than the FLSA." Padilla, 643 F. Supp. 2d at 307 (citing Jiao v. Chen, 2007 U.S. Dist. LEXIS 96480, at *9-10 (S.D.N.Y. Mar. 30, 2007)).

ME1 11760683v.1

41.     Plaintiff has withdrawn his State law claims for unpaid minimum, overtime, and spread-of-hours wages.     Therefore, <u>Padilla</u> and its more stringent standard are entirely inapplicable to this case.  <u>See also</u> <u>Jiao</u>, 2007 U.S. Dist. LEXIS 96480, at *9-10 (New York Labor Law's burden on employer to show by a preponderance of the evidence that plaintiff was properly paid for hours worked is more demanding that the FLSA, which merely requires an employer to negative the reasonableness of the inference arising from plaintiff's evidence).

42.     Plaintiff's unsupported contention that defendant "must show that plaintiff did not work any overtime in any week in his entire fifteen-year employment" is contrary to the FLSA's burden-shifting framework.  (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 22).

43.     Likewise, plaintiff's assertion that Sicherman and Itzkowitz's testimony was "insufficient under the FLSA burden-shifting framework" is conclusory and without any support. (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 24).

### III.     PLAINTIFF FAILED TO PROVIDE EVIDENCE THAT CREATES A JUST AND REASONABLE INFERENCE AS TO THE AMOUNT AND EXTENT OF HOURS WORKED.

44.     Plaintiff failed to establish as a matter of just and reasonable inference that he worked at least 56 hours a week during his employment with 1710, or that he worked any overtime hours for which he was not properly compensated.  (<u>See</u> Defendant's Proposed Concl. Law ¶¶ 90-126; <u>Contra</u> Plaintiff's Proposed Concl. Law ¶¶ 5, 17).

45.     It is undisputed that plaintiff performed no compensable work from 2:30 p.m. to 3:30 p.m., Mondays through Thursdays, and for a half-hour on Fridays.  (Daniels Testimony, Tr. at 68:12-22; 69:18).  Bona fide meal periods of 30 minutes in duration are not compensable.  29 C.F.R. § 785.19(a); <u>Contra</u> Plaintiff's Proposed Concl. Law ¶¶ 6-8).

46.     There is no evidence that plaintiff took his lunch break during his rest breaks, or took any rest breaks during his work day.  (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 7).

47.     Plaintiff's testimony regarding any alleged weekend work is not uncontradicted. (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 25).  Defendant provided testimony that plaintiff was not required to work weekends and that 1710 no reason to believe plaintiff worked on Saturday or Sunday.  (<u>See</u> Defendant's Proposed Concl. Law ¶¶ 120-126; <u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 25).

48.     Furthermore, the unrebutted testimony of Sicherman and Itzkowitz negative the reasonableness of any inference that plaintiff worked 8:00 a.m. to 6:00 p.m.  (<u>See</u> Defendant's Proposed Concl. Law ¶¶ 99, 104-105, 111, 124; <u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 19).

49.     Sicherman and Itzkowitz were not incompetent to testify under Federal Rules of Evidence 602.  (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 23).  No objection was made at trial with respect to either Sicherman or Itzkowitz's testimony, and both witnesses testified based upon their personal knowledge.

50.     Moreover, no inference may be drawn that superintendents not produced by defendants would have contradicted Sicherman's testimony with respect to their hours worked. (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 28).  Plaintiff improperly relies upon the missing witness instruction which relates to jury instructions for missing witnesses in criminal cases.  <u>See</u> <u>U.S. v. Myerson</u>, 18 F.3d 153 (2d Cir. 1994).  Plaintiff offers no support that such an instruction is applicable in civil cases in this Circuit, or that such an instruction creates an adverse inference in a non-jury trial.

51.     It is not reasonable for the Court to err on the side of over-inclusiveness in order to conclude that plaintiff worked at least 56 hours a week.  (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 11).  The Court must base its decision on the record evidence, and there is no evidence that plaintiff worked 56 hours in <u>any</u> workweek.

52.     While the Second Circuit has stated that courts may err on the side of over-inclusiveness with respect to assessing damages, it has not held that such "over-inclusiveness" may be used to determine whether plaintiff has met his initial burden under the FLSA as to the amount and extent of hours worked.  Reich v. Southern New England Telecommunications Corp., 121 F.3d 58, 70 (2d Cir. 1997); see also Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005).   Such a presumption would be contrary to the FLSA's burden-shifting framework.

53.     Plaintiff entirely misconstrues the cases cited in support of his FLSA claim. (Plaintiff's Proposed Concl. Law ¶ 29).  In Reich, the Secretary of Labor brought suit on behalf of 1500 workers employed by defendant.  The court found defendant had violated the FLSA based upon: (i) the consistent testimony of numerous workers in different positions within the company; (ii) the lack of any contradictory testimony by defendants; (iii) and the employer's abuse of an admitted policy related to lunch breaks, which was easily ascertained due to the predictable and daily-recurring periods related to such lunch breaks.  Reich, 121 F.3d at 68.  In contrast, plaintiff here relies only upon his self-contradicting testimony regarding amorphous hours and duties, which 1710 has controverted by witness testimony.

54.     Likewise, in Tran v. Alphonse Hotel Corp., 281 F.3d 23 (2d Cir. 2002), plaintiff prevailed on his FLSA claim because his testimony was corroborated by a co-worker.  Id. at 31. The Second Circuit affirmed, stating, "[w]hile the district court could have permissibly reached a different conclusions, its choice to believe the plaintiff and his corroborating witness was not clearly erroneous."  Id.  Plaintiff in this case produced no corroborating witness, and instead relies solely on his vague and malleable recollection.

ME1 11760683v.1

55.     In <u>Yang v. ACBL</u>, 427 F. Supp. 2d 327 (S.D.N.Y. 2005), the court credited plaintiff's testimony as to his hours worked because "several parts of [plaintiff's] recollection of his hours were supported by [defendant's] testimony." <u>Id.</u> at 337.  In contrast, neither Sicherman nor Itzkowitz provided testimony that supported plaintiff's evidence regarding his alleged hours worked but directly contradicted and rebutted plaintiff's contentions.

56.     In <u>Moon v. Kwon</u>, 248 F. Supp. 2d 201 (S.D.N.Y. 2002), the court found plaintiff's testimony to be consistent and more credible than that of the defendants.  <u>Id.</u> at 219-220.  In contrast, plaintiff's vague and speculative testimony is not credible and insufficient to establish the extent and amount of hours worked by plaintiff as a matter of just and reasonable inference.

57.     In all these cited cases, the plaintiffs either provided specific, credible, or corroborating testimony, or defendants made admissions or failed to rebut plaintiff's evidence. Contrary to plaintiff's contention, he is not "a lot more consistent" than the plaintiffs in these cases; he was less consistent, less specific and less credible in his testimony.  (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 29).

## IV.   PLAINTIFF HAS WITHDRAWN OR WAIVED HIS FLSA CLAIMS FOR ON-CALL PAY AND FOR UNPAID MINIMUM WAGES.

58.     In support of his FLSA overtime claim, plaintiff's Complaint alleged that plaintiff "was required to be on call . . . at all hours of the day, seven days a week." (Complaint ¶ 21).

59.     Plaintiff now states that he is not claiming "possible" on-call time even though such time "could arguably be claimed" and is not claiming time allegedly spent working after 6:00 p.m. (Plaintiff's Proposed Concl. Law ¶ 44).  Plaintiff contends that these concessions are being made by him as a favor to the Court in order to simplify the analysis.  (Plaintiff's Proposed Concl. Law ¶ 44).  Plaintiff's "concessions" are not for the Court's benefit as plaintiff suggests.

13

Rather, plaintiff had no option but to withdraw his claim for on-call pay due to his own testimony that no restrictions were placed upon him after the end of his work day and that he was free to do whatever he wanted.  (Daniels Testimony, Tr. at 74:18-75:5).

60.     Plaintiff's Proposed Findings of Fact and Conclusions of Law make no mention or calculation with respect to any alleged minimum wages owed to plaintiff under the FLSA. Therefore, plaintiff has also waived his claim for unpaid minimum wages under the FLSA. (Complaint ¶ 45).

## V.      PLAINTIFF'S FLSA CLAIM IS GOVERNED BY A TWO-YEAR STATUTE OF LIMITATIONS.

61.     Plaintiff has failed to prove that he is entitled any unpaid overtime wages under the FLSA.  However, even if he had, the two-year statute of limitations under the FLSA would apply because defendant's conduct was not willful.  (Contra Plaintiff's Proposed Concl. Law ¶ 50).

62.     The FLSA provides for a two-year statute of limitations, which extends to three years only if the defendant's conduct is "willful."  29 U.S.C. § 255(a).

63.     "The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." Saunders v. City of New York, 594 F. Supp. 2d 346, 358 (S.D.N.Y. 2008).

64.     A willful violation occurs when "the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages."  Gustafson v. Bell Atlantic Corp., 171 F. Supp. 2d 311, 327 (S.D.N.Y. 2001); Herman v. RSR Sec. Services, Ltd., 172 F.3d 132, 141 (2d Cir. 1999) (willfulness requires that the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute").

14

65.    "To show that a FLSA violation is willful, an employee must prove that the employer was more than negligent." Saunders v. City of New York, 594 F. Supp. 2d at 358. "Neither an employer's 'good-faith but incorrect assumption' regarding its FLSA obligations, nor an employer's lack of a reasonable basis for believing that it was complying with the FLSA, is by itself sufficient to demonstrate an employer's willfulness." Id. (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132, 108 S. Ct. 1677 (1988)).

66.    Plaintiff bears the burden of proving willfulness. McLaughlin, 486 U.S. at 133.

67.    There is no evidence that 1710 willfully or knowingly violated any obligation to pay plaintiff overtime wages or showed reckless disregard.   Sicherman testified that he personally informed plaintiff that his job required only five to six hours a day, Monday to Friday. (Sicherman Testimony, Tr. at 88:18-23).   Sicherman testified that plaintiff never complained about not receiving the appropriate pay and that Sicherman had no knowledge that plaintiff was allegedly working overtime.   (Sicherman Testimony, Tr. at 113:9-114:7).   Sicherman further testified that if plaintiff had ever informed him that he was working overtime, 1710 would have paid him accordingly.  (Sicherman Testimony, Tr. at 114:7-17).

68.    It is further undisputed that 1710 properly paid plaintiff all wages due and owing under New York State Law in accordance with the New York State Department of Labor's Minimum Wage Order for the Building Services Industry, 12 N.Y.C.R.R. §§ 141, et seq. ("Wage Order"), which further demonstrates that defendant did not have a reckless disregard for the law.

69.    It is not reasonable to conclude that 1710's failure to display an FLSA wage poster was reckless or intended to conceal willful conduct.  (Contra Plaintiff's Proposed Concl. Law ¶ 55).  Plaintiff's contention to the contrary is without any basis or support, either in law or in the record evidence.

15

70.     It is not reasonable for the Court to draw an inference that defendant's conduct was willful "given the immense financial benefit" to defendant.  (Contra Plaintiff's Proposed Concl. Law ¶ 56).  Plaintiff's contention to the contrary is without any basis or support, either in law or the record evidence, and would result in a finding of willfulness in every suit for unpaid wages under the FLSA.

71.     Plaintiff cites to Ruggles v. Wellpoint, Inc., 253 F.R.D. 61 (N.D.N.Y. 2008) for the proposition that the failure to keep records was further evidence of 1710's attempts to conceal its alleged willful conduct.  (Plaintiff's Proposed Concl. Law ¶ 56).  In Ruggles, the court denied defendant's motion to dismiss, holding that at the pleading stage, the failure by defendant to keep proper records merely "supported" plaintiff's claim that defendant's conduct was willful.  Id. at 68.  The court did not hold that the failure to keep records was dispositive of this issue and plaintiff has cited no case so holding.

72.     In Herman, also cited by plaintiff, (Plaintiff's Proposed Concl. Law ¶ 53), the court found one of the individual defendant's conduct to be willful and reckless because he relied upon a co-defendant to ensure the proper payment of wages despite knowing of that co-defendant's prior illegal activities and that some of the corporate defendant's own pay practices violated the law.  Herman, 172 F.3d at 142.  Herman is plainly inapposite to this case.

73.     The cases cited by plaintiff are entirely distinguishable from this case.  There is no evidence that 1710 knowingly or deliberately acted to violate the FLSA.  In the end, plaintiff can point only to the actual alleged violation itself, which is insufficient to demonstrate willfulness under the FLSA.  See Saunders, 594 F. Supp. 2d at 358 (finding no willfulness where "[p]laintiffs have offered no evidence . . . to support their claim of conscious disregard apart from the contested existence of the violations themselves").

16

## VI.   PLAINTIFF IS NOT ENTITLED TO DAMAGES UNDER NEW YORK LABOR LAW.

### A.   Plaintiff Was Paid All Wages Due Under New York Law.

74.   Plaintiff provides no support for the proposition that an independent violation of the New York Labor Law's frequency of payment provision, without more, results in the assessment of damages pursuant to Section 198. (Plaintiff's Proposed Concl. Law ¶ 57).

75.   Rather, as stated in Defendant's Proposed Findings of Fact and Conclusions of Law, plaintiff is not entitled to liquidated damages under Section 198 of the New York Labor Law as 1710 did not "fail to pay the wage required" and there are no "wages due" plaintiff within the meaning of Section 198. (See Defendant's Proposed Concl. Law ¶¶ 132-142).

76.   Plaintiff also provides no support for his calculation of damages for his New York Labor Law frequency of payment claim, (Plaintiff's Proposed Concl. Law ¶ 58), further highlighting the fact that plaintiff's State law claim presents a novel and complex issue best left to New York Courts. (See Defendant's Proposed Law ¶ 132).

### B.   1710's Conduct Was Not Willful.

77.   Section 198 applies only "upon a finding that the employer's failure to pay the wage required by this article was willful . . . " N.Y. Labor Law § 198 (1-a).

78.   Even assuming Section 198 were to apply to plaintiff's frequency of payments claim, there is no evidence in the record that 1710's conduct was willful.

79.   The test for willfulness in the context of liquidated damages under Section 198 of the New York Labor Law parallels the test employed for limitations purposes under the FLSA. Padilla, 643 F. Supp. 2d at 313.

MEI 11760683v.1

80.     Plaintiff offers no testimony or evidence that defendant knowingly or deliberately violated the New York Labor Law.  Indeed, it is undisputed that 1710 paid plaintiff all wages due him in accordance with the Labor Law and Wage Order.

81.     Plaintiff instead argues that 1710's conduct was willful for the same reasons refuted above with respect to "willfulness" under the FLSA.  Therefore, plaintiff has failed to meet his burden that defendant's conduct was willful and he cannot obtain relief under Section 198 of the New York Labor Law.

## VII.   PLAINTIFF'S DAMAGES CALCULATIONS ARE WITHOUT BASIS AND IMPROPERLY INCLUDE THE PURPORTED RENT OF PLAINTIFF'S APARTMENT.

82.     Plaintiff has failed to demonstrate any entitlement to unpaid overtime under the FLSA or liquidated damages under New York Labor Law.   Even if he had, plaintiff's calculations impermissibly include $800 a month, the purported value of plaintiff's apartment, as part of plaintiff's wages.  (Plaintiff's Proposed Conl. Law ¶ 13) However, plaintiff has failed to establish that $800 a month, or any other amount, should be attributed as "wages" paid by 1710 to plaintiff.

83.     Wages paid to an employee may include the "reasonable cost, as determined by the Administrator [of the Wage and Hour Division of the U.S. Department of Labor], to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m).  "Reasonable cost does not include a profit to the employer or  to any affiliated person." 29 C.F.R. § 531.3(b).

84.     Plaintiff has provided no evidence with respect to the reasonable cost of plaintiff's apartment as defined by the FLSA and U.S. Department of Labor's regulations.  (Contra

Plaintiff's Proposed Concl. Law ¶ 16).  He has not submitted evidence of any determination by the Administrator, as required by the FLSA.

85.     Instead, plaintiff misconstrues his own testimony to contend that the value of the apartment provided by 1710 was $800 a month.  (Plaintiff's Proposed Fact ¶ 38).  In fact, plaintiff testified that $800 a month was the rent, not the value or reasonable cost, of apartments that he believed to be comparable to his apartment.  (Daniels Testimony, Tr. at 66:17-20). Because "reasonable cost" cannot include the profit to the employer, 29 C.F.R. § 531.3(b), the rental cost cannot be the reasonable cost, and no evidence was offered as to the actual reasonable cost of the apartment.

86.     In addition, plaintiff failed to elicit any testimony as to whether defendants "customarily furnished" apartments to its employees.  See 29 U.S.C. § 203(m).

87.     Plaintiff contends that it was customary for 1710 to provide its superintendents with an apartment merely because plaintiff resided in the same apartment throughout his employment with 1710.  (Plaintiff's Proposed Fact ¶ 36).  But this argument is obvious boot-strapping.

88.     Plaintiff also contends that the superintendents preceding and following plaintiff also lived in the Building.  (Plaintiff's Proposed Fact ¶ 37).  However, there is no testimony or evidence as to whether these apartments were furnished free of rent.  Plaintiff has not established whether apartments were customarily provided to 1710's employees, as required in order to claim reasonable cost under the FLSA.

89.     Plaintiff has failed to produce any evidence establishing the reasonable cost of plaintiff's apartment or that it may be considered part of his wages under the FLSA.

19

90.     Plaintiff's contention that he has made "significant concessions" in his assessment of damages is false.  (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 44).  Plaintiff provides no evidence with respect to the "reasonable cost" of the apartment provided to plaintiff during his employment, but asks this Court to credit the alleged rental value as part of plaintiff's wages. (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 44).  Plaintiff is unable to claim work spent after 6:00 p.m. because there is no evidence of any such work.  (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 44).  Plaintiff cannot claim on-call time as he explicitly testified that he was free to do whatever he wished after hours.  (Daniels Testimony, Tr. at 74:18-75:5; <u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 44).  Plaintiff cannot claim "emergency" work because he introduced no evidence of such work.  (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 44).  Plaintiff has failed to exclude his half-hour lunch, which is in addition to the half-hour he drove his wife to work, from any compensable time.   (<u>Contra</u> Plaintiff's Proposed Concl. Law ¶ 44).   Rather than make concessions, plaintiff's damages calculation merely continue his pattern of wildly overstating his claims.

ME1 11760683v.1

## CONCLUSION

Plaintiff contends that his Proposed Findings of Fact and Conclusions of Law contain "generous concessions" that support the reasonableness of his claims. Plaintiff would have the Court believe that he has made such similar concessions throughout this litigation, but that is untrue. Plaintiff withdrew his claims for unpaid minimum, overtime and spread-of hours wages under the New York Labor Law only after being informed by 1710 as to their lack of merit under law. (Docket Document # 16, 17). Plaintiff's Complaint preposterously alleged that he was on-call "at all hours of the day, seven days a week," (Complaint ¶ 21), which claim plaintiff was forced to abandon following trial. Plaintiff has also now waived his claim for unpaid minimum wages under the FLSA.

All that remains following trial are plaintiff's bare claims for unpaid overtime under the FLSA and failure to pay wages weekly under New York Labor Law Section 191. On his FLSA claim, plaintiff seeks damages for 13 years beyond the statute of limitations, with no case law in support. Plaintiff also seeks liquidated damages under the New York Labor Law, notwithstanding his admitted receipt of all wages due under the New York Labor Law, yet again provides no case law in support.

Plaintiff's claims are unproven and his alleged damages artificial and excessive. Based upon the evidence presented at trial and for the reasons set forth above, defendant 1710 Realty LLC respectfully requests that the Court grant judgment in its favor and grant it such other and further relief that the Court deems just and proper.

21

Dated: New York, New York
       May 20, 2011

McCARTER & ENGLISH, LLP

By:_____
    Patrick M. Collins
    David S. Kim
    245 Park Avenue
    New York, NY 10167
    212-609-6800

    Attorneys for Defendant
    1710 REALTY LLC, a/k/a 1710 REALTY
    ASSOCIATES

22